UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE VRYHOF,<br><br>                                    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                                    Defendant.[1] | Case No.:  16-cv-01825-JM (DHB)<br><br>**REPORT AND<br>RECOMMENDATION ON CROSS-<br>MOTIONS FOR SUMMARY<br>JUDGMENT**<br><br>**(ECF Nos. 10, 11)** |

On July 15, 2016, Plaintiff Elaine Vryhof ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability insurance benefits. (ECF No. 1.)  On December 1, 2016, Defendant filed an Answer and the Administrative Record ("A.R.").  (ECF Nos. 7, 8.)

---

[1]     The Court hereby substitutes Nancy A. Berryhill, the Acting Commissioner of Social Security, for Carolyn W. Colvin, the former Acting Commissioner of Social Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g); ECF No. 11 at 1, n. 1.

1

On January 26, 2017, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial of benefits and an order for payment of benefits, or, in the alternative, remand for further proceedings. (ECF No. 10.) Plaintiff contends the Administrative Law Judge ("ALJ") failed to provide specific and legitimate reasons supported by substantial evidence in rejecting the opinion of Dr. Alonso, Plaintiff's treating physician for depression and anxiety since 2008. (ECF No. 10-1 at pp. 3-10.) On January 31, 2017, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion. (ECF Nos. 11, 12.) On March 14, 2017, Plaintiff filed a reply and an opposition to Defendant's motion. (ECF No. 13.)

For the reasons set forth herein, and after careful consideration of the parties' motions, the Administrative Record, and the applicable law, the Court hereby **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross-motion for summary judgment be **GRANTED**.

## I. PROCEDURAL BACKGROUND

On August 27, 2012, Plaintiff protectively filed an application for disability insurance benefits alleging disability beginning October 21, 2011. (A.R. 149-50, 168.) The Social Security Administration denied Plaintiff's claim initially on January 11, 2013, and again upon reconsideration on August 28, 2013. (A.R. 74-110.) On October 25, 2013, Plaintiff filed a written request for hearing. (A.R. 111.) Following an October 7, 2014 administrative hearing, ALJ Keith Dietterle denied Plaintiff's application on December 16, 2014. (A.R. 25-73.) Plaintiff requested review by the Appeals Counsel on February 5, 2015. (A.R. 19-24.) The Commissioner's decision became final on May 16, 2016 when the Appeals Council denied Plaintiff's request for review. (A.R. 1-7.) On July 15, 2016, Plaintiff filed a complaint pursuant to 42 U.S.C. § 405(g). (ECF No. 1.)

///
///
///
///

## II.    LEGAL STANDARD

### A.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he or she previously performed or any other substantial gainful employment which exists in the national economy.   42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as "disabled." *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000).  The five steps are:

> 1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180

F.3d 1094, 1098-99 (9th Cir. 1999)). If the claimant is able to do other work, then the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience." *Tackett*, 180 F.3d at 1099-00 (citing 20 C.F.R. § 404.1560(b)(3)).

Although the ALJ must assist the claimant in developing the record, the claimant bears the burden of proof during the first four steps. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). The Commissioner bears the burden of proof at the fifth step. *Id.* at 1100.

## B. Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision, unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 599, 601 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence." (citing *Tidwell*, 161 F.3d at 601)).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1985)). In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal*

---

[2] The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is "based on all the relevant evidence" in the case record. *Id.*

*v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citing *Andrews v. Shalala*, 53 F. 3d 1035, 1039-40 (9th Cir. 1995))); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Section 405(g) permits the Court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id*.

## III.   FACTUAL BACKGROUND

Plaintiff alleges that she became unable to work because of her disabling condition on October 21, 2011. (A.R. 149-50, 168.) In her application, Plaintiff claimed severe depression, severe anxiety, severe panic attacks, right hip pain, left shoulder pain, and uterine fibroids which cause severe pelvic pain. (A.R. 162.) Prior to her disability, Plaintiff worked as a mammographer and an x-ray technician at hospitals, medical offices, and a doctor's office. (A.R. 49, 154-58, 163-64, 191-97.)

///

///

///

///

## A.    Medical Evidence

### 1.    Treating Physicians

#### a.    *Margarita Alonso, M.D.*

Dr. Margarita Alonso is Plaintiff's treating physician at PsyCare, Inc. (A.R. 260-270, 285-325.) Dr. Alonso is a Board Certified Psychiatrist. (A.R. 325.) Plaintiff first visited Dr. Alonso on June 23, 2008 for an initial evaluation. (A.R. 311, 320.) During the initial evaluation, Dr. Alonso noted that Plaintiff was a 44-year-old female who worked as a mammographer. (A.R. 311.) Plaintiff continued to visit Dr. Alonso approximately every one to two months until at least August 2014. (A.R. 260-270, 285-319, 320.) On October 7, 2014, Plaintiff testified that she was seeing Dr. Alonso approximately once a month for medication maintenance. (A.R. 50-51.)

Dr. Alonso's medical progress notes indicate that Plaintiff had varying levels of motivation, energy, depression, anxiety, and sleep disturbance, and the occasional panic attack. (A.R. 260-270, 285-319.) Over the course of Plaintiff's treatment, Dr. Alonso prescribed Abilify, Buspar/ Buspirone, Cymbalta, Effexor, Prozac, Viibryd, Wellbutrin, and Xanax for Plaintiff. (A.R. 260-270, 285-319.)

On August 12, 2014, Dr. Alonso completed a "Mental Impairment Residual Functional Capacity Questionnaire." (A.R. 320-325.) The first page of the questionnaire includes date of first treatment, treatment frequency, prescribed medications, medication side effects, treatment and response, clinical findings, and prognosis. (A.R. 320.) Dr. Alonso's clinical findings state that Plaintiff has an "extreme reaction in terms of anxiety when she talks about returning to work." (A.R. 320.) Her prognosis is listed as "fair to poor." (A.R. 320.) Dr. Alonso notes Plaintiff's pervasive loss of interest in most activities, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, apprehensive expectation, sleep disturbance, recurrent severe panic attacks on average once a week while working, and history of multiple physical symptoms of several years duration causing her to take medication frequently, see a physician often, and alter life patterns significantly. (A.R.

321.)

Dr. Alonso states that Plaintiff would be unable to meet competitive standards in a regular work setting in the following areas: (1) work in coordination with or proximity to others without being unduly distracted; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms; (3) perform at a consistent pace without an unreasonable number and length of rest periods; (4) get along with co-workers or peers without causing them undue distraction or exhibiting behavioral extremes; and (5) respond appropriately to changes in a routine work setting. (A.R. 322.) Plaintiff would also be seriously limited, but not precluded in other areas. (A.R. 322.) Dr. Alonso explains these limitations by stating that Plaintiff has extreme anxiety and low energy that sometimes interferes with activities of daily living. (A.R. 322.) Dr. Alonso further states that Plaintiff would be seriously limited, but not precluded, from dealing with the stress of semiskilled and skilled work due to her depression, anxiety, and low energy. (A.R. 323.)

In regards to functional limitations, Dr. Alonso states that Plaintiff would have marked difficulties in maintaining social functioning, and concentration, persistence, or pace. (A.R. 324.) Marked means "more than moderate but less than extreme." (A.R. 324.) Dr. Alonso notes that she would anticipate Plaintiff's impairments or treatment to cause her to be absent from work more than four days per month. (A.R. 325.)

Also noted on the questionnaire is Plaintiff's Global Assessment of Functioning ("GAF") score. (A.R. 36, 320.) Plaintiff's GAF score at the time of the evaluation was 65. (A.R. 320.) Her highest GAF score over the course of the past year was 75. (A.R. 320.)

### 2. Examining Physicians

#### a. *Thomas J. Sabourin, M.D.*

On December 3, 2012, Dr. Thomas J. Sabourin, a Board Certified Orthopedic Surgeon, performed a physical examination of Plaintiff for an Orthopedic Consultation. (A.R. 271-76.) Plaintiff was diagnosed with "intermittent" gluteus medius tendinitis of the right hip, which Dr. Sabourin did not consider "a very severe problem." (A.R. 274.)

Plaintiff's previous left shoulder ailment was gone. (A.R. 274.) After his examination, Dr. Sabourin determined that "[Plaintiff] could lift or carry [and push and pull] 50 pounds occasionally and 25 pounds frequently." (A.R. 274.) She could also "stand and walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday." (A.R. 274.) In addition, Plaintiff could "climb, stoop, kneel, and crouch frequently," and has no manipulative limitations or need for assistive devices. (A.R. 274.)

### b. *Ana M. Andia, M.D.*

On December 17, 2012, Dr. Ana Maria Andia, a Board Certified Psychiatrist, performed a Comprehensive Psychiatric Evaluation of Plaintiff. (A.R. 277-284.) Plaintiff was diagnosed with dysthymic disorder and recurrent, moderate major depressive disorder. (A.R. 282.) Her current GAF was 62. (A.R. 282.) Dr. Andia's prognosis was that Plaintiff's condition was "stable with active treatment." (A.R. 283.)

Based on her examination, Dr. Andia found that Plaintiff: (1) is able to understand, remember, and carry out simple one or two-step job instructions; (2) is mildly limited in her ability to do detailed and complex instructions due to chronic depression and anxiety; (3) is mildly limited in her ability to relate and interact with coworkers and the public due to chronic depression and anxiety; (4) may be mildly limited in her ability to maintain concentration and attention, persistence, and pace due to chronic depression and anxiety; (5) is able to accept instructions from supervisors; (6) is able to maintain regular attendance in the work place and perform work activities on a consistent basis; and (7) is able to perform work activities without special or additional supervision. (A.R. 283.)

### 3. Non-Examining Physicians

### a. *Dr. Patrice G. Solomon and Dr. V. Michelotti*

Plaintiff was diagnosed as having a severe disorder of the muscle, ligament and fascia (Listing 1.08), and a non-severe affective disorder (Listing 12.04). (A.R. 79.) On January 8, 2013, as part of the initial determination of benefits, Dr. Patrice G. Solomon reviewed the record and completed a Psychiatric Review Technique Assessment. (A.R. 79-80.) In reviewing the "paragraph B" criteria of Listing 12.04, Dr. Solomon found that

Plaintiff had no restriction of activities of daily living, and only mild difficulties in maintaining social functioning and concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (A.R. 80.) Dr. Solomon further found that the evidence does not establish the presence of "paragraph C" criteria. (A.R. 80.) Dr. Solomon concluded that Plaintiff's affective disorder was non-severe. (A.R. 80.)

On December 18, 2012, also as part of the initial determination of benefits, Dr. V. Michelotti completed a Physical RFC Assessment. (A.R. 81-82.) Dr. Michelotti found that Plaintiff could occasionally lift and/or carry 50 pounds, and frequently lift and/or carry 25 pounds, and stand, sit and/or walk for a total of six hours in an eight hour work day. (A.R. 81-82.) Plaintiff had no other physical limitations. (A.R. 82.)

### b. *Dr. Leif Leaf and Dr. Howard Horsley*

On July 23, 2013, as part of the reconsideration of the denial benefits, Dr. Leif Leaf reviewed the record and completed a Psychiatric Review Technique Assessment, and Mental RFC Assessment. (A.R. 91-92, 94-96.) In reviewing the "paragraph B" criteria of Listing 12.04, Dr. Leaf found that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (A.R. 91.) Dr. Leaf further found that the evidence does not establish the presence of "paragraph C" criteria. (A.R. 91.) Dr. Leaf concluded that Plaintiff "has [a] severe mental MDI [Medically Determinable Impairment] that does not meet/equal a listing. She is able to perform simple routine tasks with limited social interaction and demand. She would do best with minimal change and can sustain attention for simple routine tasks." (A.R. 92.)

On August 20, 2013, also as part of the reconsideration, Dr. Howard Horsley completed a Physical RFC Assessment. (A.R. 93-94.) Dr. Horsley's assessment only differed from Dr. Michelotti's assessment in that he found Plaintiff could only climb ladders, ropes, and scaffolds occasionally. (A.R. 93-94.)

///

///

**B. The Hearing**

ALJ Dietterle held a hearing in San Diego California on October 7, 2014. (A.R. 44-73.) Plaintiff, represented by counsel, appeared and testified, as did John Kilcher, a vocational expert. (A.R. 44-73.) Their testimony is summarized below.

1. <u>Plaintiff's Testimony</u>

Plaintiff testified she was 51 years old and had a college education. (A.R. 48-49.) She stated she last worked as a mammographer in October of 2011. (A.R. 49.) Plaintiff testified she lived with her husband and daughter. (A.R. 54.)

Plaintiff testified that she left work in October of 2011 due to severe depression and anxiety. (A.R. 49.) Plaintiff further testified that she was seeing Dr. Alonso, a psychiatrist, for her condition approximately once a month for medication maintenance. (A.R. 50.) Plaintiff stated she was taking Prozac, Wellbutrin, and Xanax. (A.R. 51.)

Plaintiff testified that she was also seeing Dr. Watson, a psychiatrist, about once a month for fifty minute therapy sessions. (A.R. 51-52.) She started seeing Dr. Watson about five or six months prior to the hearing and described the help as "minimal." (A.R. 52.)

Plaintiff stated that she could not get out of bed, get dressed or washed, take a shower, brush her teeth, or put on makeup about half of the days in a month. (A.R. 53.) Plaintiff also testified that she takes care of her four-year-old daughter, drives her to and from school, prepares her breakfast, watches her play, and bathes her. (A.R. 54-56.) Plaintiff's daughter is in school four days a week, from noon to 3:00 p.m. (A.R. 54.) Plaintiff stated that when her daughter is home, Plaintiff usually lays down while watching her daughter play. (A.R. 55.) Plaintiff's husband helps take care of their daughter at night and on weekends. (A.R. 56, 67.) Plaintiff testified a 19-year old college girl helps with chores around the house and taking care of her daughter. (A.R. 58-62, 66.)

Plaintiff testified that she does not really have any hobbies. (A.R. 57.) She occasionally goes to restaurants, hosts friends at her house, and goes bowling. (A.R. 56-57, 67-68.) She testified that she stopped going to the gym in 2011 due to a lack of energy.

(A.R. 59-60.)  Plaintiff stated that she feels incapable of working a 40-hour work week due to her anxiety and depression.  (A.R. 61.)

Plaintiff testified that she takes her medication and that it helps her.  (A.R. 65-66.) She stated that she takes Xanax up to four times a week for her anxiety.  (A.R. 66.)

### 1. Vocational Expert's Testimony

John Kilcher, a vocational expert, testified that Plaintiff's past work was as a "radiologic mammogram technologist" (DOT code 078.362-026).  (A.R. 71.)  This position is classified at the light level, but the claimant performed it at the medium level and skilled, with an SVP of 7.  (A.R. 71.)

The ALJ then asked Mr. Kilcher several hypothetical questions.  First, the ALJ asked Mr. Kilcher to assume a younger individual who is now closely approaching advanced age with at least a high school education, who is literate, speaks English, and has the work experience of Plaintiff.  (A.R. 71.)  The ALJ then asked whether this person would be able to return to Plaintiff's past work if he or she is capable of the following: (1) sitting six hours in an eight hour day; (2) standing and walking six hours in an eight hour day; (3) occasionally lifting 50 pounds and frequently lifting 25 pounds; (4) frequently climbing stairs and occasionally climbing ladders, scaffolds and ropes; (5) frequently balancing, stooping, kneeling, crouching, and crawling; and (6) doing non-public, simple, and routine tasks.  (A.R. 71.)  Mr. Kilcher responded that this hypothetical person would not be able to return to Plaintiff's past work, but that there would be other jobs regionally and nationally in the labor market this hypothetical person could do, including jobs as a hand packager (medium level, unskilled, SVP of 2) and an order filler (medium level, unskilled, SVP of 2).  (A.R. 71-72.)

The ALJ next asked whether an individual "who because of psychological problems would be off task at least 20 percent of the day" would be able to sustain employment. (A.R. 72.)  Mr. Kilcher stated that this hypothetical person would not be able to sustain employment.  (A.R. 72.)

Lastly, the ALJ asked Mr. Kilcher whether someone who would miss more than four

16-cv-01825-JM (DHB)

days per month from work would be able to sustain employment. (A.R. 72.) Mr. Kilcher responded that this hypothetical person would not be able to sustain employment. (A.R. 72.)

### C. The ALJ's Findings

On December 16, 2014, the ALJ rendered an unfavorable decision regarding Plaintiff's application for disability benefits. (A.R. 25-43.) The ALJ followed the five-step sequential evaluation process in rendering his decision. (A.R. 25-43.) At step one, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since October 21, 2011, the alleged onset date." (A.R. 30.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: affective disorder and tendinitis of the right hip. (A.R. 30.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 30-31.) The ALJ found that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (A.R. 30.) Specifically, the ALJ stated that Plaintiff's mental impairment did not meet or medically equal the criteria listing of 12.04, including the criteria of "paragraph B" and "paragraph C." (A.R. 30-31.)

The ALJ found that Plaintiff had the RFC "to perform medium work . . . with the following additional limitations: she is capable of sitting for six hours in an eight hour workday; she is capable of standing and walking for six hours in an eight hour workday; she can occasionally lift 50 pounds and frequently lift 25 pounds; she can frequently climb stairs; she can occasionally climb ladders, scaffolds, and ropes; she can frequently balance, stoop, kneel, crouch, and crawl; and she is capable of doing nonpublic, simple, routine tasks." (A.R. 31.) In reaching this determination, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting

effects of her symptoms are not entirely credible to the extent those statements are inconsistent with the [RFC] assessment herein." (A.R. 32-33.)

In order to view the record in the light most favorable to the claimant, the ALJ reviewed all of the medical evidence in the record dating back to 2008. (A.R. 33-34.) He also took into consideration the opinions of the State agency review physicians, the opinions of the consultative examiners, and the opinions of Plaintiff's treating physicians. (A.R. 33-35.) The ALJ stated that he gave little weight to the opinion of psychiatric consultative examiner, Dr. Andia, and the State agency mental medical consultants on initial review and on reconsideration. (A.R. 35-36.) He further stated that he gave the opinions of orthopedic consultative examiner, Dr. Sabourin, and the State agency physical medical consultants, significant weight, but not full weight. (A.R. 36.) With respect to the August 12, 2014 mental impairment RFC questionnaire completed by Dr. Alonso, Plaintiff's treating physician, the ALJ determined that it had no probative value because it was not supported by any objective evidence. (A.R. 36.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (A.R. 37.) Finally, at step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (A.R. 37.) Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act from October 21, 2011 through the date of the decision. (A.R. 38.)

## IV. DISCUSSION

In his decision, the ALJ found the mental impairment RFC questionnaire completed by Dr. Alonso on August 12, 2014 to have "no probative value because it is not supported by any objective evidence." (A.R. 36.) In Plaintiff's motion for summary judgment, Plaintiff contends the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence in rejecting the opinion of Dr. Alonso, specifically the finding that Plaintiff would miss more than four days per month of work due to her condition. (ECF No. 10-1 at pp. 3-10.) Plaintiff seeks reversal of Defendant's denial and

an award of disability benefits, or, alternatively, remand for further proceedings. (*Id.* at pp. 10-11.) Plaintiff argues that the record is fully developed and further administrative proceedings would be futile. (*Id.*) In Defendant's cross-motion for summary judgment, Defendant counters that the ALJ gave specific and valid reasons for discounting Dr. Alonso's opinion, supported by substantial evidence, and the decision should be upheld. (ECF No. 11-1 at pp. 3-7.)

### A. The ALJ's Evaluation of Dr. Alonso's Opinion

#### 1. Legal Standard

In assessing a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)). However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997) (citing *Andrews*, 53 F.3d at 1041; *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the

treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id*. (citing *Magallanes*, 881 F.2d at 751; *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citing *Magallanes*, 881 F.2d at 751).

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *Id*.; *see also* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain circumstances. *Lester,* 81 F.3d at 830. An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician. *Id.* at 830-31. Even if the opinion of a treating physician is contradicted by another source, it can only be rejected for "specific and legitimate reasons" that are "supported by substantial evidence in the record." *Id.* at 830; *see also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (rejecting a treating

physician's statement without "any specific reference as to why he disregarded it . . . is not a sufficient statement of reasons."). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

2.  Analysis

In his opinion, the ALJ discusses in detail the progress notes of Dr. Alonso, who has been treating Plaintiff for depression and anxiety since 2008. (A.R. 33-34.) The ALJ also discusses in detail an August 12, 2014 mental impairment RFC questionnaire completed by Dr. Alonso. (A.R. 36.) After noting that the "checklist-style form appears to have been completed as an accommodation to the claimant," the ALJ found that the questionnaire has "no probative value because it is not supported by any objective evidence." (A.R. 36.) In coming to this conclusion, the ALJ cited the following reasons: (1) the form "includes only conclusions regarding functional limitation without any rationale for those conclusions;" (2) Dr. Alonso's functional limitations for Plaintiff are inconsistent with the GAF scores she gave Plaintiff, which indicate Plaintiff's impairments would only mildly affect her ability to function; and (3) Dr. Alonso's opinion that Plaintiff had more than a one-year history of inability to function outside a highly supportive living arrangement was not supported by the record, which did not contain any evidence of decompensation or psychiatric hospitalizations, and Dr. Alonso's opinion was inconsistent with Plaintiff's admitted activities of daily living, which include caring for a young child. (A.R. 36.)

The parties do not dispute that Dr. Alonso's opinion was contradicted by another source, thus it can only be rejected for "specific and legitimate reasons" that are "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830.[3]  For the following reasons, the Court finds that the ALJ did not err in rejecting the opinion of Dr. Alonso.

///

///

---

[3] (*See* ECF No. 10-1 at p. 6 n. 5; ECF No. 11-1 at pp. 3-6.)

16-cv-01825-JM (DHB)

a.    *GAF Score*

First, Plaintiff argues that "[w]hile a GAF score of 65 is indicative of mild limitations, it is not inconsistent with the other limitations because Dr. Alonso was assessing [Plaintiff's] work-related limitations." (ECF No. 10-1 at 7.)  Plaintiff contends that the GAF score noted by Dr. Alonso reflects Plaintiff's current level of functioning, which is in a non-work environment. (*Id.*)  In addition, Plaintiff argues the GAF score is "merely a snapshot in time," and does not address the specific work-related function being addressed. (*Id.*)

"A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citation omitted).  Although the Commissioner has determined the GAF scale does not have a direct correlation to the severity requirements found in the Social Security Administration's mental disorders listings, and a GAF score is not dispositive, the scores are still relevant in assessing an individual's functionality. *See* 65 Fed. Reg. 50746, 50765 (Aug. 21, 2000), *available at* 2000 WL 1173632; *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001) (considering the GAF score); *Graham v. Astrue*, 385 F. App'x 704, 706 (9th Cir. 2010) (noting that the claimant's "GAF scores are not dispositive because they were assessed at a time when [the claimant] was not working," but they are "nonetheless relevant"); *Mann v. Astrue*, No. EDCV 08-1338 AN, 2009 WL 2246350, at *1-3 (C.D. Cal. July 24, 2009) (considering GAF score).

Here, in determining whether Dr. Alonso's findings were supported by objective evidence in the record, the ALJ did not err by considering Plaintiff's GAF score.  While a GAF score is not dispositive in determining ability to work, the ALJ permissibly observed that Plaintiff's GAF score of 65, which is only indicative of mild limitations, was inconsistent with Dr. Alonso's findings of more extreme functional limitations for Plaintiff. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (a physician's opinion may be rejected because it is self-contradictory).  As the observation was only one of several

factors the ALJ noted in rejecting the opinion of Dr. Alonso, the Court finds the ALJ did not err in considering the inconsistency.

### b. *Highly Supportive Living Arrangement*

Second, Plaintiff argues the ALJ improperly rejected Dr. Alonso's opinion that Plaintiff had more than a one year history of inability to function outside a highly supportive living arrangement. (ECF No. 10-1 at 8, 9.) In his findings, the ALJ stated "the medical record showed no evidence of episodes of decompensation or psychiatric hospitalizations and [Dr. Alonso's] opinion was also inconsistent with the claimant's admitted activities of daily living, which included caring for a young child." (A.R. 36.) Plaintiff argues there is no evidence that Dr. Alonso equated a highly supportive living environment with episodes of decompensation or psychiatric hospitalizations. (ECF No. 10-1 at 9.) Rather, Plaintiff believes "Dr. Alonso's opinion in more likely indicative of a highly supportive home environment, i.e., family situation, which takes into account" Plaintiff's needs. (*Id*.) Defendant argues that the ALJ properly discounted Dr. Alonso's opinion because it was in conflict with other evidence in the record. (ECF No. 11-1 at p. 5.)

The Court agrees that Dr. Alonso did not specify what she relied on in checking the box that said Plaintiff has a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such arrangement." (A.R. 324.) This is one of the issues with utilizing a checklist style form that is conclusory in nature. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (the ALJ properly discounted two treating doctors' opinions because they were in the form of a checklist, did not have supportive objective evidence, were contradicted by other statements and assessments of the claimant's medical condition, and were based on the claimant's subjective descriptions of pain); *Tonapetyan*, 242 F.3d at 1149 (an ALJ need not accept the opinion of a treating physician that is "conclusory and brief and unsupported by clinical findings"). However, the relevant section on the checklist form – completed for the purpose of assisting Plaintiff in obtaining social security benefits

– mirrors the language of "paragraph C" of Listing 12.04.[4] The introductory section to the listing specifically states that "[h]ighly structured and supportive settings" include "placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure," including the home. 20. C.F.R. § Pt. 404, Subpt. P, App. 1, at § 12.00(F); *see also Moore v. Colvin*, No. 14cv2361-LAB (KSC), 2016 WL 791149, at \*30 (S.D. Cal. Feb. 10, 2016). Thus, in noting contradictions between the opinion and the record, the ALJ did not clearly err in considering whether Plaintiff had any psychiatric hospitalizations.

Moreover, the ALJ also found that Plaintiff's purported inability to function outside a "highly supportive living arrangement" was inconsistent with her activities of daily living. (A.R. 36.) Plaintiff testified that she lives with her husband, four-year-old daughter, and a college student who helps out around the house. (A.R. 54, 62.) Plaintiff further testified that she drives her daughter to and from school four days a week, bathes her, and fixes meals for her. (A.R. 54-56.) Plaintiff's daughter is only in school from noon to 3:00 p.m. (A.R. 54.) Plaintiff also occasionally goes out to restaurants, goes bowling, prepares meals, grocery shops, drives herself to doctors' appointments, and hosts friends at her house. (A.R. 56-57, 61.) These activities suggest that Plaintiff does not currently have or

---

[4] At the time of the ALJ's opinion, recognized, affective mental disorders were listed and described under listing 12.04 of the Code of Federal Regulations Part 404, Subpart P, Appendix 1. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, at § 12.04. In order to meet the listing, Plaintiff must have medically documented persistence, either continuous or intermittent, of an affective disorder and meet the criteria of "paragraph B," or meet the requirements of "paragraph C." *Id.* Paragraph C of the listing requires "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and one of the following: . . . (3) *[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.*" *Id.* at § 12.04(C)(3) (emphasis added).

require a highly supportive living arrangement.[5]  *See, e.g., Emery v. Colvin*, No. 5:15-06062-DGK-SSA, 2016 WL 5338519, at *2-3 (W.D. Miss. Sept. 21, 2016) (finding the record, which showed that the plaintiff lived in her own home with her sons and largely cared for them herself, does not establish that the plaintiff's home "was so highly structured or supportive that it was akin to a mental hospital, halfway house, or board and care facility"); *McCray-Keller v. Colvin*, No. 2:12-cv-674-EFB, 2013 WL 5467201, at *11 (E.D. Cal. Sept. 30, 2016) (finding the evidence does not establish an inability to function outside of a highly supportive living arrangement, where the plaintiff's reported activities of daily living include taking the bus, going out alone, performing household chores, taking care of her child, and managing bills and money); *Escobar v. Astrue*, No. 2:11-cv-2656 CKD, 2013 WL 78474, at *5 (E.D. Cal. Jan. 4, 2013) (finding that plaintiff's ability to maintain fair hygiene and clear and concise thought process even while homeless was adequate evidence that plaintiff did not need a highly supportive living situation to function).

Taken together, the Court finds the ALJ did not improperly reject Dr. Alonso's opinion that Plaintiff had more than a one year history of inability to function outside a highly supportive living arrangement.

### c.   *Activities of Daily Living*

Third, Plaintiff argues the ALJ improperly rejected Dr. Alonso's opinion on the basis that her opinion is inconsistent with Plaintiff's admitted daily activities, including the ability to care for a young child.  (ECF No. 10-1 at 9.)  Specifically, Plaintiff argues that no facial inconsistency exists because Dr. Alonso only provided an opinion on Plaintiff's ability to perform work related functions and not her ability to perform daily activities.  (*Id*.)

---

[5]   Moreover, on the questionnaire, Dr. Alonso deemed Plaintiff's restrictions of activities of daily living to be only "moderate," in a choice between "None-Mild," "Moderate," "Marked," and "Extreme."  (A.R. 324.)

16-cv-01825-JM (DHB)

For the reasons discussed above, the ALJ did not err in considering Plaintiff's activities of daily living in rejecting the opinion of Dr. Alonso. In addition, courts have determined that "[i]f a claimant is able to spend a substantial part of his [or her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600. Being able to care for a child can serve as evidence in support of an individual's ability to work. *Id.*; *see also Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that an ability to perform daily activities such as taking care of personal needs, preparing easy meals, doing light housework, and shopping for some groceries "may be seen as inconsistent with the presence of a condition which would preclude all work activity").

Therefore, based on Plaintiff's testimony of her daily activities, including her ability to care for her young child, the Court finds the ALJ did not improperly consider Plaintiff's activities of daily living in rejecting Dr. Alonso's opinion.

### d. *Lack of Rationale*

In her initial motion, Plaintiff does not address the ALJ's finding that the check-list style questionnaire contains only conclusions regarding Plaintiff's functional limitations without any rationale for those conclusions. However, in response to Defendant's cross-motion, Plaintiff argues that Dr. Alonso's check-list questionnaire is sufficient because it is backed by treatment records and years of treatment. (ECF No. 13 at 4.)

"[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings." *Batson*, 359 F.3d at 1195 (citing *Tonapetyan*, 242 F.3d at 1149). In *Batson*, the Ninth Circuit held the ALJ did not err in giving minimal evidentiary weight to the opinions of the treating physicians, where the physicians gave conclusory opinions in the form of a checklist, and the ALJ found they were not supported by objective evidence or substantive medical findings, were contradicted by other statements and assessments of the plaintiff's medical condition, and were based on the plaintiff's subjective descriptions of pain. *Id.* at 1195; *cf.*

16-cv-01825-JM (DHB)

*Garrison*, 759 F.3d at 1013 (finding the ALJ erred in ignoring most of the treatment records of the treating physician who filled out a checklist style questionnaire).

Here, the ALJ found that the "checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions."[6]  (A.R. 36.)  In her response, Plaintiff does not point to any specific treatment records that support the limitations in Dr. Alonso's opinion.  Rather, Plaintiff generally cites to all of Dr. Alonso's treatment records. (*See* ECF No. 13 at 4 (citing A.R. 260-270, 289-319).)

As laid out above, Plaintiff first visited Dr. Alonso for an initial evaluation on June 23, 2008.  (A.R. 311, 320.)  Plaintiff continued to visit Dr. Alonso approximately every one to two months until at least August 2014.  (A.R. 260-70, 285-320.)  On October 7, 2014, Plaintiff testified that she was seeing Dr. Alonso approximately once a month for medication maintenance.  (A.R. 50-51.)  In his opinion, the ALJ discusses Dr. Alonso's notes in detail.  (A.R. 33-34.)  He observes that the progress notes do not note any specific objective findings.  (*Id.*)  The notes primarily document Plaintiff's reports of how she is feeling and any changes to the medications she is receiving.  (*Id.*)  After consideration of the record as a whole, the ALJ found that Plaintiff had symptoms of depression, anxiety, and sleeplessness; however, the extreme limitations in Dr. Alonso's questionnaire were not supported by the record, including Dr. Alonso's notes.  (A.R. 35-36.)

---

[6]    An ALJ may question a doctor's credibility where the "doctor's opinion letter ha[s] been solicited by the claimant's counsel."  *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1995).  Here, Dr. Alonso's questionnaire was on Plaintiff's law firm's letterhead and dated less than two months prior to the ALJ hearing.  (A.R. 105, 320-325.)  However, "in the absence of other evidence to undermine the credibility" of the opinion letter, the purpose for which the opinion letter "was obtained does not provide a legitimate basis for rejecting it."  *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *see e.g., Saelee*, 94 F.3d at 523 (the ALJ permissibly concluded the doctor's solicited opinion was untrustworthy because the opinion was worded ambiguously in an apparent attempt to assist the claimant in obtaining social security benefits and there was no objective basis for the opinion).

Based on the foregoing, the Court finds that, unlike in *Garrison*, the ALJ here properly considered the treatment records in rejecting the opinion of Dr. Alonso, as it was conclusory, brief, and unsupported by the record as a whole, including Dr. Alonso's own notes, and any objective medical findings. *See Batson*, 359 F.3d at 1195.

Altogether, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, to reject the opinion of Dr. Alonso in the August 12, 2014 mental RFC questionnaire. *See Lester,* 81 F.3d at 830; *Salvador*, 917 F.2d at 15.

## V. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross-motion for summary judgment be **GRANTED.**

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c).

**IT IS HEREBY ORDERED** that no later than **<u>August 18, 2017</u>**, any party may file and serve written objections with the Court and serve a copy on all parties. The documents should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed and served **<u>August 25, 2017</u>** after being served with the objections. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 4, 2017

LOUISA S PORTER
United States Magistrate Judge

16-cv-01825-JM (DHB)